```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

```
DOMINIQUE CURRY,               )
                               )
                               )
                               )
      Plaintiff,               )
                               )
v.                             )       No. 11-2912
                               )
BROTHER INTERNATIONAL, L.P.,   )
                               )
                               )
      Defendant.               )
```

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are the January 11, 2013 Motion to Dismiss (the "Motion") filed by Defendant Brother International, L.P. ("Brother") and the Magistrate Judge's June 19, 2013 Report and Recommendation (the "Report"). (Motion, ECF No. 32); (Report, ECF No. 43.) *Pro Se* Plaintiff Dominique Curry ("Curry") objected to the Magistrate Judge's Report on July 3, 2013. (Objections, ECF No. 44.) Brother responded to Curry's Objections on July 19, 2013. (Resp. to Objections, ECF No. 45.) The Magistrate Judge recommends converting the Motion into one for summary judgment and granting it. For the following reasons, the Court ADOPTS the Report of the Magistrate Judge.

Brother's Motion converted into one for summary judgment is GRANTED.

**I. Background**

On October 14, 2011, Curry filed a *pro se* complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Compl., ECF No. 1.)

Curry alleges that, on or about August 5, 2011, she was discriminated against on the basis of sex when Brother terminated her employment. (Report 2.) Curry filed charges of discrimination with the Tennessee Fair Employment Commission and the Equal Employment Opportunity Commission ("EEOC") on August 8, 2011. (Id.) The EEOC issued a right-to-sue letter to Curry on August 12, 2011. (Id. 2-3.)

On August 15, 2011, Curry filed a bankruptcy petition (the "Petition") in the United States Bankruptcy Court for the Western District of Tennessee. (Id. 3.) In her Petition, Curry was required to "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Id.) Curry marked "NONE." (Id.) Elsewhere in the Petition, Curry was required to list any "[o]ther contingent and unliquidated claims of every nature." (Id.) She marked "NONE." (Id.) Curry did not mention her discrimination claim against

2

Brother. (Id.) She declared under penalty of perjury that her answers were true and correct. (Id.)

Also on August 15, 2011, Curry filed a Chapter 13 Plan in the bankruptcy court proposing to pay $89.00 per week. (Id.) On August 19, 2011, the bankruptcy court entered an Order Directing Debtor(s) to Make Payments to Trustee, which required Curry to pay $89.00 per week. (Id. 3-4.) On September 17, 2011, the bankruptcy court entered an Order Directing Debtor to Change Payments to Trustee, which altered Curry's payments to $143.00 per week. (Id. 4.) On October 3, 2011, the bankruptcy court entered an order amending Curry's bankruptcy plan "to include the balance of fines and costs owed to Shelby County and payable to the Clerk of General Sessions Criminal Court Creditor." (Id.) On October 14, 2011, Curry filed her *pro se* complaint in this Court. (Id.)

On October 27, 2011, the bankruptcy court entered an order that confirmed and finalized Curry's plan to pay $143.00 per week. (Id.) On November 14, 2012, Curry's bankruptcy attorney filed amended property schedules in the bankruptcy court, which added an "[e]xpected EEOC settlement from Brother and Aerotek resulting from a discrimination suit."[1] (Id.) Curry listed the

---

[1] Aerotek is not a named defendant in this case. Curry's action against Aerotek is a "related lawsuit against another company." (Report 4 n.3.)

3

current value of the claims against Brother and Aerotek as $22,000.00. (Id.)

On November 8, 2012, information about Curry's bankruptcy and discrimination claims came to light during her deposition in her case against Aerotek. (Id. 5.) Curry admitted that she had read the answers provided in her Petition and understood the importance of their accuracy. (Id.) Curry admitted that she filed the Petition under penalty of perjury. (Id.) Curry admitted that she responded "NONE" when the Petition asked her to list suits and administrative proceedings, executions, garnishments, and attachments. (Id.) Curry stated that she did not understand the question correctly or "didn't know what this was going to lead to" because it was her "first time going through something like this." (Id.) Although Curry stated that she employed a law firm to file for bankruptcy, she did not ask a lawyer for help in answering the question about the status of administrative proceedings. (Id.)

## II. Standard of Review

### A. 28 U.S.C. § 636

Congress intended 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v.

4

Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). "A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151.

"Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection." McCready v. Kamminga, 113 F. App'x 47, 49 (6th Cir. 2004). A general objection "is considered the equivalent of failing to object entirely." Id. (citing Howard v. Sec. of Health Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). The Sixth Circuit's standard applies to *pro se* litigants. Id.

### B. Summary Judgment

Curry does not object to the conversion of Brother's Motion into one for summary judgment. Because Curry has not objected, and the time for doing so has passed, the Court will follow the

5

Magistrate Judge's recommendation to analyze Brother's Motion under the standard for summary judgment.

Under Federal Rule of Civil Procedure 56, on motion of either party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a). The moving party satisfies this burden by demonstrating that the respondent, having had sufficient opportunities for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(2); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc.,

6

477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Mere reliance on the pleadings is insufficient opposition to a properly supported motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The district court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty the identify specific evidence in the record that would be sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**III. Analysis**

    **A. Proposed Findings of Fact**

7

Curry objects that: (1) she corrected mistakes on her bankruptcy filings within one week of discovering her error; (2) she never intended to "cause any malicious or orchestrated, premeditated act to any court of law for gamesmanship" or profit; (3) mistakes made in her bankruptcy filing were inadvertent and the result of stresses that accompanied being the head of her household; (4) she has voluntarily increased her bankruptcy payments; and (5) her case is about justice, not "about [her] personal financial affairs." (Objections 3-6.)

Under a separate section entitled "Information Outside the Pleadings," Curry identifies several issues that the Court understands as objections. (Id. 8.) The gravamen of those objections is that, although Curry "made a mistake on paper," she didn't make a "mistake on [her] job." (Id.)

### 1. Corrections To Petition

Curry objects that she corrected mistakes on her bankruptcy filings within a week of discovering an error. Curry's objection is consistent with the Magistrate Judge's Report. The Magistrate Judge notes that Curry learned of her mistake at a deposition on November 8, 2012. (Id. 5.) He notes that Curry "did amend her Petition on November 14, 2012," within one week. The Magistrate Judge's finding of fact is correct.

### 2.   Mistake and Gamesmanship

8

Curry admits that she made mistakes on her Petition, but she objects that her mistakes were not intended to "cause any malicious or orchestrated, premeditated act to any court of law for gamesmanship." (Objections 3-4.). Although styled as an objection to a finding of fact, the Court understands Curry to address the Magistrate Judge's legal conclusion that Curry should be judicially estopped from raising her discrimination claim. (Report 16-18.)

The Magistrate Judge relies on a theory of judicial estoppel. (Report 12) ("[T]he sole issue is whether Curry should be judicially stopped from proceeding in the instant case due to her representations to the bankruptcy court."). Section 521 of the United States Bankruptcy Code states that debtors must file a "schedule of assets and liabilities, a schedule of income and current expenditures, and a statement of the debtor's financial affairs[.]" 11 U.S.C. § 521(a)(1). "[I]t is well-settled that a cause of action is an asset that must be scheduled under § 521." Lewis v. Weyerhaeuser Co., 141 F. App'x 420, 424 (6th Cir. 2005). This disclosure requirement is a continuing legal duty "and a debtor is required to disclose all potential causes of action." Id.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another

9

place." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). It is used "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 475-76 (6th Cir. 2010) (citing Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002)).

Three considerations bear on the application of judicial estoppel:

> (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750–51. The factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751. The Sixth Circuit urges courts to "avoid impinging on the truth-seeking function of the court, because [judicial estoppel] precludes a contradictory position without examining the truth of either statement." Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004) (citation and internal quotation marks omitted).

10

In the bankruptcy context, the Sixth Circuit has established three factors to support a finding of judicial estoppel:

> (1) [a party] assumed a position contrary to the one that [the party] asserted under oath in the bankruptcy proceeding; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the party's] omission did not result from mistake or inadvertence.

White, 617 F.3d at 478. To determine whether conduct was the result of mistake or inadvertence, the Sixth Circuit considers whether "(1) [the party] lacked knowledge of the factual basis of the undisclosed claims; (2) [the party] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." Id.

The Magistrate Judge concludes, and the Court agrees, that the application of judicial estoppel is appropriate. It is uncontested that Curry assumed a contrary position earlier in her bankruptcy proceeding, and that the bankruptcy court adopted that contrary position by confirming a final bankruptcy plan on October 27, 2011. Curry submits that assuming a contrary position was a mistake, but no evidence supports her claim. Curry received a notice of right to sue from the EEOC before filing her Petition, which shows that she "had knowledge of the factual basis of the undisclosed harassment claim, since she had already filed a complaint before the EEOC." White, 617 F.3d at

11

479; see also Thomas v. Proctor and Gamble Distrib., No. 1:11-cv-796, 2012 WL 4107968, at *3 (S.D. Ohio Sept. 19, 2012) ("Plaintiff's EEOC filing makes clear that she had knowledge of the facts forming the basis of her discrimination claim[]. . . ."). Curry received her right-to-sue letter on August 12, 2011, and filed her Petition, omitting her discrimination claim, on August 15, 2011. Curry had knowledge of the factual basis for her undisclosed claim.

The Magistrate Judge also concludes, and the Court agrees, that Curry had a motive to conceal her claim. "It is always in a Chapter 13 petitioner's interest to minimize income and assets." Lewis, 141 F. App'x at 426; see also Johnson v. Interstate Brands Corp., No. 07-2227B, 2008 WL 152895, at *4 (W.D. Tenn. Jan. 14, 2008) ("A motive to conceal can be inferred from the omission itself, because [b]y omitting the claims, [the debtor] could keep any proceeds for herself and not have them become part of the bankruptcy estate.") (internal citation and quotation marks omitted). The policy underlying this conclusion is practical. If Curry's discrimination claim became part of her bankruptcy estate, the proceeds could be paid to satisfy her creditors instead of paying her directly. See White, 617 F.3d at 479. Curry had a motive to conceal her claim.

Curry submits that she did not act in bad faith because she corrected the mistake on her Petition within a week of

12

discovering it. To show an absence of bad faith, a plaintiff must demonstrate "her attempts to correct her initial omission." Id. at 480. Curry amended her Petition on November 14, 2012, more than a year after filing her Petition and more than a year after filing the instant action. Her amendment was filed only after she was deposed in the Aerotek case on November 8, 2013. She only "fixed her filings after the opposing party pointed out that [her Petition] was inaccurate." Id. at 481. The circumstances show that a misrepresentation, not a mistake, was uncovered during the Aerotek deposition. Failure to apply judicial estoppel "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Swanigan v. Northwest Airlines, Inc., 718 F. Supp. 2d 917, 922 (W.D. Tenn. 2010).

To the extent Curry amended her Petition, she amended only that part titled Schedule B. She did not amend her Statement of Financial Affairs. Partial amendments are inadequate to show an absence of bad faith. See White, 617 F.3d at 481 ("[The plaintiff] did not adequately fix those filings, but instead, only updated a part of them (so that they still did not reflect the estimated value of the lawsuit)."). Curry's untimely and inadequate attempt to inform the bankruptcy court of her claim against Brother does not show an absence of bad faith. Judicial estoppel is appropriate.

13

Curry also objects that she has voluntarily increased her bankruptcy payments and that her case is about justice, not "about [her] personal financial affairs." (Objections 3-6.) The Magistrate Judge's Report does not address Curry's voluntarily increasing her payments. Whether she increased her payments is not germane to judicial estoppel. To the extent she objects on that ground, her objection is OVERRULED.

Curry objects that her case is about justice, not her "personal financial affairs." Judicial estoppel turns on contrary representations made in separate proceedings, which in this case directly implicates Curry's representations about her personal financial affairs. The facts support the application of judicial estoppel. Curry's objection is OVERRULED.

### B. Proposed Conclusions of Law

In a section characterized as objecting to the Magistrate Judge's conclusions of law, Curry states that she is proceeding *pro se* and describes the personal hardship that the litigation has caused. (Objections 9-10.) Those are general objections not rooted in any legal doctrine. Failing to object specifically to the Magistrate Judge's Report "has the same effect as would a failure to object." Howard, 932 F.2d at 509. Because her Objections are insufficient, they are OVERRULED.

### IV. Conclusion

14

For the foregoing reasons, the Report is ADOPTED and Curry's objections are OVERRULED.  Summary Judgment is GRANTED.

So ordered this 25th day of July, 2013.

                                        s/ Samuel H. Mays, Jr.
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE